UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC., ILLINOIS FAMILY ACTION, BREAKTHROUGH IDEAS, and CAROL J. DAVIS,<br><br>Plaintiffs,<br><br>v.<br><br>THE ILLINOIS STATE BOARD OF ELECTIONS, and BERNADETTE MATTHEWS, in her capacity as the Executive Director of the Illinois State Election Board,<br><br>Defendants. | No. 24 C 1867<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

On March 5, 2024, Plaintiffs Judicial Watch, Inc., Illinois Family Action, Breakthrough Ideas, and Carol J. Davis filed a complaint for declaratory and injunctive relief against the Illinois State Board of Elections and its Executive Director Bernadette Matthews (collectively, "the State Board"), alleging that the State Board violated Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507 *et seq.*, by failing to comply with voter list maintenance obligations. These obligations include the State Board's obligation to maintain a statewide voter registration list where voters can be removed for ineligibility based on their failure to respond to address confirmation notices, as well as the enrolled voters' failure to vote in two consecutive general federal elections. 52 U.S.C. §20507(d)(1); *see also* 10 Ill. Comp. Stat. 5/1A-25.

On April 2, 2024, the Illinois AFL-CIO and the Illinois Federation of Teachers (collectively, "Proposed Intervenors") moved to intervene in this case as defendants. Proposed Intervenors contend they are entitled to intervention as of right under Federal Rule of Civil

Procedure 24(a), or, in the alternative, that the Court should grant permissive intervention under Rule 24(b). Plaintiffs oppose intervention, arguing that Proposed Intervenors do not satisfy the test for intervention under either standard. The State Board takes no stance on Proposed Intervenors' motion. Because the Court finds that Proposed Intervenors satisfy all elements of Rule 24(a), it grants their motion to intervene in this case and adds them as defendants.

## BACKGROUND

I. The NVRA and Illinois Voter Registration Rolls

The NVRA requires states to "conduct a general program that makes a reasonable effort to remove" individuals from voter registration rolls who have become ineligible by death or change of residence. 52 U.S.C. § 20507(a)(4). The NVRA provides a framework for removing voters who have become ineligible due to a residence change: they must either confirm this fact in writing or fail to respond to an address confirmation notice. 52 U.S.C. § 20507(d)(1). The NVRA also requires states to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter." 52 U.S.C. § 20509.

Illinois law requires the State Board to maintain the "centralized statewide voter registration list required by" federal law. 10 Ill. Comp. Stat. 5/1A-25. This includes updating the voter registration lists to remove ineligible voters for reasons that the NVRA provides. Illinois law designates as the responsible state official the Executive Director of the State Board as the Chief State Election Official. 26 Ill. Adm. Code § 216.100(b).

II. The State Board

The State Board supervises the administration of voter registration and election laws throughout the State of Illinois. Aside from these duties, it also recommends legislation to the

Illinois General Assembly, adopts regulations to improve the election process, disseminates information regarding elections, and develops education programs for election authorities and the general public. Matthews serves as Chief State Election Official, in addition to her role as Executive Director of the Illinois State Board of Elections.

### III.     Plaintiffs

Judicial Watch, Inc. is a non-profit educational organization incorporated in the District of Columbia that investigates government misconduct to maintain political integrity. Illinois Family Action, an Illinois corporation, is a non-profit lobbying organization that works to advance public policies that support its views. Breakthrough Ideas, an Illinois corporation, is a non-profit advocacy organization. Davis is a resident and voter of DuPage County, Illinois. Plaintiffs seek declaratory and injunctive relief compelling the State Board to fulfill its obligations under Section 8 of the NVRA to institute a program to remove ineligible voters from Illinois' voter registration list.

Judicial Watch sent notice to the State Board on August 4, 2023, requesting its compliance with the NVRA. Prior to sending notice, Judicial Watch reviewed the State Board's data and believed that it was insufficiently removing non-voters from its registered voter rolls under Section 8 of the NVRA. The State Board's counsel informed Plaintiffs on September 1, 2023 that the State Board had no obligation to act on Plaintiffs' requests. Plaintiffs then sent the State Board notice of their intent to bring suit on November 15, 2023. On March 5, 2024, Plaintiffs filed their complaint against the State Board seeking declaratory and injunctive relief.

### IV.     Proposed Intervenors

On April 2, 2024, Proposed Intervenors moved to intervene in this case. The Illinois AFL-CIO is an organization consisting of more than one thousand unions, which collectively

represent close to one million workers in Illinois. The Illinois AFL-CIO expends resources to encourage its members to vote in every election. The Illinois Federation of Teachers is an affiliated union within the Illinois AFL-CIO. It represents over one hundred thousand schoolteachers and school-related personnel, including retired teachers.

Proposed Intervenors claim an organizational interest in avoiding adverse reallocation of resources to protect the voting rights of their members, as well as an associational interest in protecting their members from unlawful removal from the voter rolls. Proposed Intervenors claim that Plaintiffs' requested relief will impair these interests because their members' voting rights will be infringed by Plaintiffs' requested relief via removal from the voting rolls.

## ANALYSIS

A movant may intervene as a matter of right if it satisfies the factors set out in Federal Rule of Civil Procedure Rule 24(a)(2): "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994). The Court accepts "as true the non-conclusory allegations of the [purported intervenor's] motion." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995).

Plaintiffs concede that Proposed Intervenors' motion is timely but contest the remaining three elements of Rule 24(a)'s test. The Court analyzes these three factors, ultimately finding that Proposed Intervenors satisfy each element of the test for intervention as of right.

### I. Interest Relating to the Case

"Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69

F.3d 1377, 1380–81 (7th Cir. 1995). The interest analysis "focus[es] on the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues." *Id.* The Seventh Circuit has determined "that the potential intervenor's interest [must] be a 'direct, significant legally protectable' one." *Reich*, 64 F.3d at 322 (quoting *Am. Nat'l Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989)). At the same time, it has also recognized "statements of the Supreme Court as encouraging liberality in the definition of an interest." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982).

While Rule 24 does not define the term "interest," "'the case law makes clear that more than the minimum Article III interest is required.'" *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 391–92 (7th Cir. 2019) (quoting *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009)). Intervenors must present a "unique" interest based on their own rights, which is independent from the interests of the existing parties. *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 798 (7th Cir. 2019). However, the interest does not need to *only* belong to prospective intervenors. *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 687 (7th Cir. 2023). "Properly understood, the 'unique' interest requirement demands only that an interest belong to the would-be intervenor in its own right, rather than derived from the rights of an existing party." *Id.*

Proposed Intervenors assert two interests: an organizational interest in avoiding adverse reallocation of resources to protect the voting rights of their members, and an associational interest in protecting their members from unlawful removal from the voter rolls should Plaintiffs succeed in obtaining their requested relief. Plaintiffs first argue that Proposed Intervenors' concerns are unfounded and overstated because they are not seeking relief that the State Board could implement before the upcoming 2024 general election. Although the Court acknowledges

5

that Proposed Intervenors may have misunderstood the timeline for any remedy Plaintiffs may secure in this case should they succeed, that is irrelevant to whether Proposed Intervenors identify legitimate interests.

Plaintiffs next argue that the interests Proposed Intervenors identified are not unique interests because Proposed Intervenors and the State Board would ultimately be seeking to protect the voting rights of some of the same individuals. However, the Seventh Circuit recently determined that interests almost identical to the ones Proposed Intervenors claim here are "unique." *Id.* And the same reasoning the *Bost* court applied to the intervenors in that case applies here: Proposed Intervenors' interests are unique because the State Board's interests concern *all* voters in Illinois, whereas Proposed Intervenors are only concerned with the voting rights of their members. This makes Proposed Intervenors' interest independent of and unique from the State Board's. *Id.* Although Plaintiffs attack *Bost*'s holding as applicable only to changes in state law, they fail to explain how a change in state law differs from (assuming Plaintiffs secure their sought relief) renewed implementation of federal law when Proposed Intervenors assert they will need to expend resources to ensure that such a change does not impair their interests.

Plaintiffs' arguments aside, both of Proposed Intervenors' interests satisfy the required "direct, significant, and legally protectable interest" standard. *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985); *see also Reich*, 64 F.3d at 322. Both their asserted organizational and associational interests belong to Proposed Intervenors. The interests are not derivative of any other party's rights, and they exist independently of the State Board's role and interests in this action. *Bost*, 75 F.4th at 687. Therefore, Proposed Intervenors' interests satisfy the "unique" interest standard for the purpose of Rule 24(a). *Id.*

**II.     Potential Impairment of Proposed Intervenors' Interest**

A potential intervenor's interest would be impaired if deciding the "legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes*, 683 F.2d at 204.  A court should not deny intervention simply because a proposed intervenor could bring its claims later through separate, subsequent, burdensome litigation.  *City of Chicago v. Fed. Emergency Mgmt. Agency* (*"FEMA"*), 660 F.3d 980, 985 (7th Cir. 2011).  A prospective intervenor's case for impairment weighs heavier when he has no claims against any defendant.  *Lopez-Aguilar*, 924 F.3d at 392–93; *see also Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 507 (7th Cir. 1996).

Proposed Intervenors assert that Plaintiffs' success in their case would impair their organizational interest because any resulting judgment (or settlement) that leads to the State Board removing currently registered voters from the rolls would require Proposed Intervenors to reallocate resources to maintain their members' voter eligibility.  According to Proposed Intervenors, many of their members "do not have a permanent address or spend long periods of time away from home," which makes it more likely that the State Board would remove them from the voter rolls should they fail to timely respond to confirmation notices.  Doc. 15 at 14.  Proposed Intervenors also argue that voter list maintenance programs are error prone and additional members are likely to be mistakenly removed from the voter rolls.

Plaintiffs argue that Proposed Intervenors fail to establish that their interests will be impaired absent intervention because the NVRA provides them a private right of action under 52 U.S.C. § 20510, meaning Proposed Intervenors can file a separate suit should Plaintiffs' remedy in this case cause them harm.  But simply because Proposed Intervenors have the option of

bringing a separate case does not make their intervention in this one inappropriate. *See FEMA*, 660 F.3d at 985 (ability for proposed intervenor to separately litigate is not "an automatic bar to intervention"). All Rule 24 requires is that Proposed Intervenors identify an interest that a favorable result for Plaintiffs would damage—Proposed Intervenors have done so here, so they satisfy this element of Rule 24(a)(2).

### III.  Adequacy of Representation

Proposed Intervenors bear the burden of showing that no named party adequately represents their interests. *Planned Parenthood of Wis.*, 942 F.3d at 797. The Seventh Circuit has constructed a three-tiered test to determine the adequacy of representation. *See id.* at 799; *see also Bost*, 75 F.4th at 688 (describing the three tiers). The strictest tier applies when a named party is a governmental body that has a legal obligation to represent the proposed intervenor's interest. *See Bost*, 75 F.4th at 689. A potential intervenor carries the heaviest burden in this tier and must show gross negligence or bad faith on behalf of the governmental body to overcome the presumption of adequate representation. *Planned Parenthood of Wis.*, 942 F.3d at 799; *see also Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007).

Plaintiffs contend that because the State Board is a governmental entity, Proposed Intervenors fall under the strictest tier and must show that the State Board will be grossly negligent or represent its interests in bad faith to overcome the rebuttable presumption of adequate representation prior to intervention under Rule 24(a). But out of all the State Board's seventeen enumerated powers and duties, not one of them obligates the organization to represent Proposed Intervenors' interests. *See* 10 Ill. Comp. Stat. 5/1A-8 (listing the State Board's powers and duties, including "[d]isseminat[ing] information to and consult[ing] with election authorities concerning the conduct of elections and registration," "[r]ecommen[ing] to the General

Assembly legislation to improve the administration of elections and registration," and "[s]upervis[ing] the administration of the registration and election laws throughout the State"), 10 Ill. Comp. Stat. 5/1A-25 ("The centralized statewide voter registration list . . . shall be created and maintained by the State Board of Elections as provided in this Section."); *cf Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020) ("More broadly, the Commission *regulates* the transmission companies, it does not *advocate for* them or represent their interests."); *Bost*, 75 F.4th at 689 (finding that regulatory bodies have obligations to the general public and do not advocate for individual organizations' interests). The State Board's execution of its duties may be in tension with Proposed Intervenors' interests. An obvious example is that the State Board might deem the potential for costly litigation in this case a suboptimal use of its resources and might therefore enter into a more generous settlement agreement with Plaintiffs that might run contrary to Proposed Intervenors' interests. More to the point, Proposed Intervenors assert an interest in preserving *their* resources and protecting the voting rights of *their* members: the State Board has no obligation to protect these specific resources or voting interests. Thus, the strictest tier does not apply. *See Driftless*, 969 F.3d at 748 (strictest tier does not apply when law does not require government agency to protect proposed intervenors' interests).

      The next standard, the intermediate standard, applies if a proposed intervenor and a named party have the same interest. *Bost*, 75 F.4th at 688. This occurs "only where the interests are genuinely 'identical.'" *Id.*; *see also Driftless*, 969 F.3d at 748. If the intermediate standard applies, then a proposed intervenor must overcome a presumption of adequate representation, which it can do by showing some concrete conflict with a named party's representation of the interest(s) at issue. *Driftless*, 969 F.3d at 747.

9

Plaintiffs argue in the alternative that this intermediate standard applies because Proposed Intervenors and State Board have the same goals. But this would require them to have "genuinely 'identical'" interests, and the Venn-diagram of interests that Proposed Intervenors and the State Board assert do not entirely overlap. *Bost*, 75 F.4th at 688. The State Board has an interest in fulfilling its election obligations as required by the NVRA and Illinois law. *See* 52 U.S.C. § 20507(d)(1) (providing framework for removing ineligible voters from voter registration rolls); *see also* 10 Ill. Comp. Stat. 5/1A-25 (describing requirements for establishing central voter registration rolls). Proposed Intervenors seek protection for their discrete set of members' voting rights and have an interest in preventing resource reallocation in doing so. Clearly, there is daylight between Proposed Intervenors' interests and those that belong to the State Board. *See Bost*, 75 F.4th at 687. Thus, the intermediate standard likewise does not apply.

The most lenient standard, also known as the "default rule," applies when the interests of the proposed intervenors are not identical to a named parties' interest. *Bost*, 75 F.4th at 688, *see also Miami Tribe of Okla. v. Walden*, 206 F.R.D. 238, 241 (S.D. Ill. 2001) ("A proposed intervenor has made a sufficient showing that representation may be inadequate under Rule 24(a)(2) if it demonstrates that the existing parties' interests are not completely identical to and may come into conflict with its own interests."). Under the default rule, a proposed intervenor has a light burden to show that a named party may inadequately represent its interests. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Ligas*, 478 F.3d at 774.

In this case, the default rule applies. The Seventh Circuit has noted that potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party. *See, e.g*, *FEMA*, 660 F.3d at 985 (finding a risk of potential conflict of interest in future settlement negotiations is sufficient to

warrant the default rule under adequacy of representation); *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998) (intervention as of right warranted when existing parties might have "face[d] the irresistible temptation to work out settlements that benefit themselves and not the other, competing timber companies"). Proposed Intervenors cite such potential conflicts here. They assert that the State Board is more likely to enter into a settlement agreement with Plaintiffs that would jeopardize their interests. *See Bost*, 75 F.4th at 690 (citing *Trbovich*, 404 U.S. at 538-39) (finding representation may be inadequate when potential intervenors' interests dictate different litigation strategies than existing parties, including future settlement). They note that government defendants like the State Board have previously settled in similar litigation and that they would be unable to protect their interests from harm in a similar settlement without being a party in the negotiations. *See, e.g.*, *Daunt v. Benson*, No. 20 C 522, Doc. 58 (W.D. Mich. Feb. 16, 2021) (stipulation of dismissal with press release outlining settlement agreement including removal of ineligible voters). Further, Proposed Intervenors argue that settlement will likely include voter list-maintenance measures that will force them to divert resources to educate its members about the potential impact of such maintenance and how to avoid having their names removed from voter rolls. These are cognizable harms to Proposed Intervenors' interests should the State Board choose to enter settlement negotiations. Proposed Intervenors have thus demonstrated that the State Board does not adequately represent their interests under the lenient default tier of scrutiny. *See FEMA*, 660 F.3d at 985 (potential harm from settlement agreement suffices to show inadequate representation of proposed intervenors' interests). Although Plaintiffs argue that any future settlement is merely hypothetical, and quote *Bost* to argue that "hypothetical conflicts" do not suffice to show a conflict of interest, *id.*, Plaintiffs misquote *Bost*. The full quote is, "though DPI cites many out-of-circuit cases for the

11

proposition that even *hypothetical* conflicts are enough under the default standard, DPI has not proposed even a possible conflict between itself and the Board. It is hard to imagine how we could hold that there 'may be' a conflict if DPI itself cannot point to one." *Id.* Here, Proposed Intervenors have identified at least one conflict that would arise in the context of a negotiated settlement. Under *Bost*, that is enough.

Proposed Intervenors have established all four Rule 24(a)(2) factors for intervention as of right. The Court therefore grants Proposed Intervenors' motion to intervene.[1]

## CONCLUSION

Because Proposed Intervenors established all requirements under Rule 24(a), the Court grants Proposed Intervenors' motion to intervene as of right [14]. The Court adds the Illinois AFL-CIO and Illinois Federation of Teachers as defendants in this case.

Dated: July 18, 2024

_____
SARA L. ELLIS
United States District Judge

---

[1] Because the Court finds that Proposed Intervenors are entitled to intervention as of right, the Court does not address the parties' arguments regarding permissive intervention.