# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC.; ILLINOIS FAMILY ACTION; BREAKTHROUGH IDEAS; and CAROL J. DAVIS,<br><br>Plaintiffs,<br><br>v.<br><br>THE ILLINOIS STATE BOARD OF ELECTIONS; and BERNADETTE MATTHEWS, in her capacity as the Executive Director of the Illinois State Board of Elections,<br><br>Defendants,<br><br>and<br><br>ILLINOIS AFL-CIO and ILLINOIS FEDERATION OF TEACHERS,<br><br>Intervenor-Defendants. | No. 1:24-cv-01867<br><br>Hon. Sara L. Ellis |

## INTERVENOR-DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS (ECF NO. 57)

Intervenor-Defendants the Illinois AFL-CIO and the Illinois Federation of Teachers respectfully submit this Notice of Supplemental Authority in support of their Motion to Dismiss (ECF No. 57-1). On October 22, 2024, after Intervenor-Defendants filed that motion, the Western District of Michigan issued an opinion in *Republican National Committee v. Benson*, No. 1:24-CV-262, 2024 WL 4539309 (W.D. Mich. Oct. 22, 2024) ("*RNC*"), dismissing a complaint brought by the RNC and individual voters seeking declaratory and injunctive relief for an alleged violation of the National Voter Registration Act's requirement to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters,"

1

52 U.S.C. § 20507(a)(4)—precisely the claim Plaintiffs bring here in Count I of their complaint. Dismissal is warranted here for the same reasons: Plaintiffs fail to establish standing and fail to state a plausible claim upon which relief may be granted.

*First*, the *RNC* court held that individual plaintiffs cannot demonstrate an injury-in-fact based on their "fear" of ineligible voters casting ballots and "concerns that their legitimate votes would be 'diluted' by those of ineligible voters," undermining their confidence in state elections, recognizing that such allegations are "an insufficient basis for properly invoking federal-court jurisdiction." *RNC*, 2024 WL 4539309, at *8–9. The individual voter here, and Judicial Watch on behalf of its "members," allege the same injuries. Compl. ¶ 85 (alleging diminished confidence in "the integrity of the electoral process" and "fear that their legitimate votes will be nullified or diluted"). As the *RNC* court held, Plaintiffs' "subjective concern about the integrity of [Illinois's] elections, including their professed concern about vote dilution, is the type of generalized grievance common to all [Illinois] residents," and "are not 'particularized'" to them. *RNC*, 2024 WL 4539309, at *9.

*Second*, the court in *RNC* also rejected organizational standing arguments similar to those Plaintiffs make here, on many of the same grounds that Defendants and Intervenor-Defendants have argued they should be rejected. *Compare id.* at *11–12, *with* ECF No. 41-1 at 16-17; ECF No. 57 at 3–7; ECF No. 59 at 3–5; ECF No. 65 at 2–5. Of particular note, the *RNC* court properly rejected the RNC's claim that it could establish standing based on its allegations that it (1) "expended substantial time and resources investigating Defendants' failure to comply with their list-maintenance obligations," (2) "communicated with Michigan officials and concerned members about Defendants' failures," and (3) "researched statements made by Defendants in their correspondence," *RNC*, 2024 WL 4539309, at *12. Similarly, here, Judicial Watch claims that it

2

"expended substantial resources, including staff time, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with Illinois officials and concerned members about Defendants' failure, and researching statements made by Defendants in their correspondence." Compl. ¶ 90. But as the court held in *RNC*, "[t]hese allegations do not describe a personal stake in the outcome of a controversy as to warrant invocation of federal-court jurisdiction" because no resources were "diverted to ameliorate and counteract the challenged practices," but instead were expended "to discover whether any controversy exists." *RNC*, 2024 WL 4539309, at *12; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

*Third*, *RNC* supports Intervenor-Defendants' argument that Plaintiffs failed to plausibly state a violation of the NVRA. The *RNC* plaintiffs could not state such a claim by alleging that Michigan is not cancelling registrations quickly enough, which they based on a comparison of the removal rates in a two-year period and census data showing higher rates of residents changing houses during the same period. *RNC*, 2024 WL 4539309, at *13. Because "[t]he NVRA prohibits states from removing voters suspected of moving until at least two federal general elections have passed," the "cancellation rate over a short period of time would not offend the NVRA." *Id.* at *14. As Intervenor-Defendants have explained, Plaintiffs' allegations here suffer from the same flaws. *See* ECF No. 65 at 6–12. Plaintiffs rely exclusively on reported removals during a single two-year period—even though the NVRA has a four-year statutory waiting period before a voter who may have moved can legally be removed—for their "[c]onclusory assertions that merely parrot the language of a statute." *RNC*, 2024 WL 4539309, at *14; *see also* Compl. ¶¶ 37, 41, 44, 47 (repeatedly asserting that Illinois is failing "to conduct a general program that makes a reasonable

3

effort to cancel the registrations of voters who have become ineligible by reason of a change of residence"). But their allegations lack "factual context to 'nudge' their statutory violation claim 'across the line from conceivable to plausible.'" *RNC*, 2024 WL 4539309, at *14 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009)); *see also* ECF No. 65 at 8–12 (explaining why Plaintiffs' effort to supply context to their allegations fails). And, like the *RNC* plaintiffs, Plaintiffs here have "not identif[ed] a single voter in any [Illinois] county who is ineligible to be registered but nonetheless appears as an active voter." *RNC*, 2024 WL 4539309, at *12. Without any factual context demonstrating a "specific breakdown in [Illinois's] removal program," *id.* at *13, the data on which Plaintiffs rely, "even assuming its reliability," cannot plausibly state a violation of the NVRA, *id.* at *14.

For the reasons articulated in Intervenor-Defendants' filings and as further explained by the Michigan district court, this Court should dismiss Plaintiffs' complaint for lack of standing and failure to state a claim.

Dated: October 28, 2024　　　　　　　　　　　　Respectfully Submitted,

**JENNER & BLOCK LLP**

By:　/s/ Sarah F. Weiss

Sarah F. Weiss
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
(312) 840-7597
sweiss@jenner.com

4

                                        Elisabeth C. Frost*
                                        Jyoti Jasrasaria*
                                        Julie Zuckerbrod*
                                        Elias Law Group LLP
                                        250 Massachusetts Ave NW, Suite 400
                                        Washington, D.C. 20001
                                        Telephone: (202) 968-4490
                                        Facsimile: (202) 968-4498
                                        efrost@elias.law
                                        jjasrasaria@elias.law
                                        jzuckerbrod@elias.law

                                        *Attorneys for Intervenor-Defendants*
                                        **Admitted pro hac vice*