### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., ILLINOIS FAMILY ACTION, BREAKTHROUGH IDEAS, and CAROL J. DAVIS, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 24 C 1867 |
| v. | ) ) | Judge Sara L. Ellis |
| THE ILLINOIS STATE BOARD OF ELECTIONS, BERNADETTE MATTHEWS, in her capacity as the Executive Director of the Illinois State Board of Elections, | ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| ILLINOIS AFL-CIO and ILLINOIS FEDERATION OF TEACHERS, | ) ) ) | |
| Intervenor-Defendants. | ) | |

### OPINION AND ORDER

Plaintiffs Judicial Watch, Inc., Illinois Family Action ("IFA"), Breakthrough Ideas, and Carol J. Davis sued the Illinois State Board of Elections (the "Board") and Bernadette Matthews, in her official capacity as the Board's acting executive director (together with the Board, the "State Defendants"), asserting violations of Section 8(a)(4) and 8(i) of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq.* Plaintiffs allege that the State Defendants failed to satisfy their voter list maintenance obligations under Section 8(a)(4) of the NVRA and that their refusal to provide Plaintiffs with requested information on voter registration violates Section 8(i) of the NVRA. Plaintiffs request declaratory and injunctive relief to compel the State Defendants to comply with their voter list maintenance and informational obligations under Section 8 of the NVRA.

After Plaintiffs sued, the Illinois AFL-CIO ("AFL-CIO") and Illinois Federation of Teachers ("IFT," with AFL-CIO, the "Intervenor Defendants," and, with the State Defendants, "Defendants") moved to intervene in this case. The Court granted their motion. *See* Doc. 52.

Now, the State Defendants and the Intervenor Defendants separately move to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argue that Plaintiffs lack standing to bring their claims and, alternatively, that their complaint fails to state a claim. Although the Court agrees that Plaintiffs lack standing to bring their Section 8(a)(4) claim because they failed to allege a sufficient injury in fact, it finds that Judicial Watch has standing to bring a Section 8(i) claim because it asserts an informational injury that confers standing and the complaint sufficiently states this claim. Therefore, the Court grants in part and denies in part Defendants' motions to dismiss.

## BACKGROUND[1]

### I. The NVRA

Congress adopted the NVRA, which regulates voter registration, to "protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)–(4). Among other things, the NVRA requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or a change in residence. *Id.* § 20507(a)(4). The NVRA otherwise prohibits states from removing names from the voter rolls

---

[1] The Court takes the facts in the background section from Plaintiffs' complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

unless the individual voter requests their removal, state law requires removal, or the state removes the individual voter pursuant to a mandatory removal program. *Id.* § 20507(a)(3). Further, the NVRA requires the U.S. Election Assistance Commission ("EAC") to annually "submit to the Congress a report assessing the impact of this chapter on the administration of election for Federal office." *Id.* § 20508(a)(3).

Section 8(i) of the NVRA provides for public disclosure of certain voter registration activities. *Id.* § 20507(i). Specifically, Section 8(i)(1) provides:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

*Id.* Section 8(i)(2) specifies that "records" "include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made." *Id.*

Illinois designated the Board, an independent state agency, as the responsible party for supervising the administration of voter registration and election laws throughout Illinois. The Board maintains the centralized voter registration database required by the Help America Vote Act of 2002 and has authority to carry out rules necessary to implement the NVRA's prescribed voter registration form. Matthews, the Board's acting executive director, serves as the State's chief election official and holds responsibility for coordinating the State's compliance with the NVRA.

3

## II.    Non-State Parties

Judicial Watch is a not-for-profit, educational organization that seeks "to promote transparency, integrity, and accountability in government and fidelity to the rule of law."  Doc. 1 ¶ 82.  Judicial Watch's members make financial contributions to the organization that finance its actions in support of its mission.  Judicial Watch utilizes public records requests and litigation to achieve its mission and represent its members' interests.  Davis is a member of Judicial Watch, and a resident and registered voter in DuPage County, Illinois.  Judicial Watch brings its claims both as an association on behalf of its members and as an organization asserting its own injury.

IFA, a 501(c)(4) organization, is a "political advocacy and lobbying organization."  *Id.* ¶ 93.  IFA endorses and supports political candidates.  Utilizing Illinois' voter rolls, IFA contacts Illinois voters to "encourage them to assist the candidates it supports by volunteering, organizing, contributing, and voting."  *Id.* ¶ 94.

Breakthrough Ideas, a 501(c)(4) organization, employs policy advocacy and education to advance "taxpayer-centric and liberty-focused policies and how they benefit all community members."  *Id.* ¶ 95.  Additionally, utilizing Illinois' voter rolls, Breakthrough Ideas contacts Illinois registered voters to assist in its get-out-the-vote efforts and mission.

AFL-CIO is an organization consisting of more than one thousand unions, which collectively represent close to one million workers in Illinois.  AFL-CIO expends resources to encourage its members to vote in every election.  IFT is an affiliated union within AFL-CIO. IFT represents over one hundred thousand schoolteachers and school-related personnel, including retired teachers.

AFL-CIO and IFT have an organizational interest in avoiding adverse reallocation of resources to protect the voting rights of their members, as well as an associational interest in

protecting their members from unlawful removal from the voter rolls.  *See* Doc. 52 at 8–12. AFL-CIO and IFT claim that Plaintiffs' requested relief will impair these interests because their members face a high risk of being improperly removed from the voter roll due to housing insecurity and the migratory nature of their employment and/or schooling.

### III.   The EAC Report

On June 29, 2023, the EAC published its biennial NVRA-related report along with states' responses to a voter registration survey from the EAC.  States, with assistance from county and local officials, directly certified their answers to the voting survey with the EAC.

According to the EAC report, eleven Illinois counties removed zero voter registrations pursuant to Section 8(d)(1)(B) from November 2020 to November 2022.  Additionally, twelve Illinois counties removed fifteen or fewer voter registrations pursuant to Section 8(d)(1)(B) during the same period.  These twenty-three counties reported "a combined total of 980,089 voter registrations as of November 2022."  Doc. 1 ¶ 30.  Because the most common reason for voter registration removal is change of residence, the "largest number of removals under the NVRA are usually made pursuant to Section 8(d)(1)(B)."  *Id.* ¶ 27.  Based on Plaintiffs' experiences, these low numbers of removal under Section 8(d)(1)(B) mean that Illinois and specifically the twenty-three counties are not making a reasonable effort to remove ineligible voters as the NVRA requires.  Furthermore, according to the EAC survey, thirty-four Illinois counties did not report any data regarding Section 8(d)(1)(B) removals to the EAC.  The survey indicated "data not available."  *Id.* ¶ 38.  Nineteen of these counties also did not report any data on registrations they removed due to the death of the registered voter.

## IV.     Judicial Watch's Communications with the State Defendants

On August 4, 2023, Judicial Watch sent Matthews a letter asking her to confirm that the removal numbers from the twenty-three counties identified in the EAC report as removing fifteen or fewer voter registrations were accurate, and, if it was not, to provide the correct data. Judicial Watch also requested that Matthews provide the missing county and city-level data on removals, confirmation notices, and inactive registrations. Judicial Watch indicated the letter was a "public records request seeking records related to the accuracy of the voter registration list," rather than a pre-suit notice of violation. Doc. 1-1 at 1. The letter "requested six categories of public records pursuant to Section 8(i) of the NVRA." Doc. 1 ¶ 53.

On September 1, 2023, the State Defendants explained that "Illinois is a bottom up jurisdiction, where local election authorities are responsible for inputting and maintaining voter registration records for their residents." Doc. 1-2 at 1. Therefore, the State Defendants did "not possess documents responsive to" Judicial Watch's request for the names and addresses of all persons to whom local election officials sent confirmation notice required by Section 8(d)(1)(B). *Id.* at 3. The State Defendants further stated that "[a]ny request for more information . . . should be made directly to the local election authority." *Id.* at 2.

On November 15, 2023, Plaintiffs sent Matthews a letter notifying her of the alleged NVRA violations and threatening to bring a lawsuit if she did not cure the violations within ninety days. *See* Doc. 1-3 at 1. The letter alleged a violation of the NVRA based on the EAC report that indicated Illinois counties removed an insufficient amount of voter registrations according to Section 8(d)(1)(B) and a failure to provide records pursuant to Section 8(i).

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.    Standing

The Court starts with standing, which "'is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action.'"  *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (quoting *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988).  To establish standing to seek injunctive relief, Plaintiffs must allege (1) "an actual or imminent threat of suffering a concrete and particularized 'injury in fact,'" which (2) Plaintiffs can fairly trace to the defendant's conduct and that (3) a favorable judicial decision will likely prevent or redress.  *Common Cause Ind. v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019).  "Article III standing requires a concrete injury even in the context of a statutory violation."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (no standing for "a statutory violation completely removed from any concrete harm or appreciable risk of harm").  Plaintiffs must demonstrate standing with respect to each individual claim.  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (courts should "insist that a plaintiff must demonstrate standing separately for each form of relief sought" (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983))).

The NVRA provides a private right of action to any person "aggrieved by a violation" of the NVRA if, after providing written notice of the violation to the state's chief election official, the state has not corrected the violation within ninety days of receipt of such notice.  52 U.S.C. § 20510(b).  "Standing under the NVRA is limited to the United States Attorney General and the 'aggrieved persons' whose voting rights have been denied or impaired." *Krislov v. Rednour*, 946

F. Supp. 563, 566 (N.D. Ill. 1996) (citing *Roberts v. Wamser,* 883 F.2d 617, 621 (8th Cir. 1989)) (holding unsuccessful candidates did not have standing to bring a claim under the NVRA).

### A.       Violation of Section 8(a)(4) (Count I)

#### 1.       Individual and Associational Plaintiffs

Defendants argue that Davis and Judicial Watch, as an association representing its members, each lack standing because they have not alleged concrete or particularized injuries that satisfy the injury in fact requirement.  According to Defendants, Davis and Judicial Watch's injuries are not particularized because they allege only a general grievance against the State. Defendants also argue that the injuries are not sufficiently concrete because the claimed "diminished confidence in the electoral process is nothing more than an abstract idea."  Doc. 41-1 at 17.  As the individual members of the association do not have standing, Defendants claim that by extension Judicial Watch does not have standing to represent its members.  *See Shakman v. Clerk of Cook Cty.*, 994 F.3d 832, 840 (7th Cir. 2021) (association has standing to sue on behalf of its members only if any member would, *inter alia*, "have individual standing to sue"). Plaintiffs respond that the Supreme Court has recognized that "public confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 197 (2008) (upholding Indiana's Voter ID requirements because states have a significant government interest in preventing voter fraud).  Plaintiffs also point out that based on *Crawford*, the Southern District of Indiana held that individual state residents had standing to sue under the NVRA based on their claimed injury of decreased confidence in the voting system.  *Judicial Watch v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012).

"[A]n association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975) (citing *Nat'l Motor Freight Ass'n v. United States*, 372 U.S. 246, 247 (1963)). To have standing as a representative, the "association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id.* Therefore, if the association's members do not have standing, the association does not have standing as their representative. *Democratic Party of Wis. v. Vos*, 966 F.3d 581, 586 (2020) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)) ("The Party's associational standing claim can be resolved easily: because the Party's members do not have standing to sue in their own right, the Party does not have standing to sue on their behalf.").

A plaintiff cannot obtain standing by alleging a generalized grievance. *See Bost v. Ill. State Bd. of Elections*, 114 F.4th 634, 640 (7th Cir. 2024). The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–574 (1992). Fears over vote dilution are generally insufficient. *Bost*, 114 F.4th at 641 ("Plaintiffs here only claim a generalized grievance affecting all Illinois voters; therefore, they have not alleged a sufficiently concrete and particularized injury in fact to support Article III standing."). Here, Davis and Judicial Watch assert only a generalized grievance of decreased confidence in the voting system. Although Davis and Judicial Watch rely on *Judicial Watch v. King* to argue that their decreased confidence in the election system provides standing under *Crawford*, that decision appears to be an outlier to the general approach other courts have taken

10

with respect to *Crawford*'s standing analysis. *See, e.g.*, *Iowa Voter All. v. Black Hawk Cnty.*, 515 F. Supp. 3d 980, 991–92 (E.D. Iowa 2021) (rejecting plaintiffs' "integrity-of-the-election argument" without evidence of infringement on "their ability to cast a meaningful vote"); *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015) (finding alleged injuries of "undermined voter confidence and potential vote dilution" are merely generalized grievances that do not satisfy the standing requirements); *Md. Election Integrity, LLC v. Md. State Bd. of Elections*, No. 24 C 672, 2024 WL 2053773, at *3 (D. Md. May 8, 2024) (rejecting plaintiff's claims of injury based on vote dilution and fear of ballot being counted incorrectly because they were not concrete or imminent). The Court agrees with the majority view that generalized concerns over vote dilution do not give rise to standing, and rejects Davis' and Judicial Watch's expansive view of *Crawford*. *See, e.g.*, *Black Hawk Cnty.*, 515 F. Supp. 3d at 991–92. The Court finds that Davis has not established an injury in fact, and that Judicial Watch, as an association that must rely on its members' injuries to possess standing, similarly lacks the injury in fact necessary to have standing for purposes of its Section 8(a)(4) claim.

### 2. Organizational Plaintiffs

The organizational Plaintiffs, Judicial Watch, IFA, and Breakthrough Ideas, contend that they have standing as nonprofit plaintiffs who diverted their resources due to the State Defendants' actions, pursuant to *Havens Realty Corp v. Coleman*, 455 U.S. 363, 379 (1982). Plaintiffs allege that IFA and Breakthrough Ideas have standing through direct monetary losses that these two groups attribute to the State Defendants' alleged failure to comply with the NVRA. Further, Plaintiffs assert that IFA, Breakthrough Ideas, and Judicial Watch also have standing based on their diversion of resources to combat the State Defendants' alleged NVRA violation. Defendants argue that the organizational Plaintiffs lack standing because they have

not suffered a concrete economic injury and did not allege sufficient facts to support their claim

of standing based on diverted resources. Defendants claim that the Supreme Court's recent

decision in *FDA v. Alliance for Hippocratic Medicine* supports this conclusion. 602 U.S. 367,

394–395 (2024). Defendants further contend that even if the organizational Plaintiffs satisfy the

injury in fact requirement, they fail to establish that the State Defendants' conduct caused their

injuries.

The standing inquiry for organizational plaintiffs is the same as the inquiry for

individuals: organizations must establish an injury in fact, causation, and redressability. *Havens*,

455 U.S. at 379. An organizational plaintiff can establish an injury in fact by alleging the

defendant's conduct compelled it to devote resources to combat the effects of said conduct. *Id.*

(holding that the organizational plaintiff's allegations that it "had to devote significant resources

to identify and counteract the defendant's" conduct was sufficient to allege a concrete injury

(citation omitted)); *Lawson*, 937 F.3d at 950 (organization can have standing to challenge voting

laws if the laws caused "'it to devote resources' to combatting the effects of the law that are

harmful to the organization's mission" (quoting *Marion Cnty. Election Bd.*, 472 F.3d at 951).

Relatedly, an organization's diversion of resources from one aspect of its mission to another also

can establish that organization's economic injury. *Havens*, 455 U.S. at 379; *Lawson*, 937 F.3d at

951–53 (discussing the organization's diversion of resources as one form of the broader

economic injury).

In *Havens*, the Supreme Court held that the plaintiff had standing because the defendant's

actions "perceptibly impaired [the plaintiff's] ability to provide counseling and referral services

for low-and moderate-income homeseekers." *Id.* at 379. This impairment "constitute[d] far

more than simply a setback to the organization's abstract social interests." *Id.* Elaborating on

this holding in *Alliance for Hippocratic Medicine*, the Court found that the plaintiff medical associations lacked standing to challenge the FDA's mifepristone regulations simply because they claimed to have "expend[ed] considerable time, energy, and resources . . . to the detriment of other spending priorities." 602 U.S. at 394 (citation omitted) (internal quotation marks omitted). The Court explained that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing." *Id*. Accordingly, the Supreme Court clarified that standing under *Havens* does not exist simply because "an organization diverts resources in response to a defendant's actions," but that the associations must also point to an "impediment to [their] advocacy businesses" as well. *Id*. at 395.

Similar to the associations in *Alliance for Hippocratic Medicine*, Judicial Watch alleges that it diverted resources to research the State's voter registration practices and contact the State to obtain voter registration data. *Compare id.* at 394 (explaining that the associations claimed that the FDA forced them "to conduct their own studies on mifepristone," "draft[] citizen petitions to FDA, as well as engag[e] in public advocacy and public education"), *with* Doc. 1 ¶ 91 (claiming Judicial Watch expended substantial resources "to investigate, address, research, and counteract Defendants' failure to comply with" the NVRA). But as in *Alliance for Hippocratic Medicine*, Judicial Watch's diversion of resources claim does not establish standing because "an organization that has not suffered a concrete injury caused by defendant's action cannot spend its way into standing." *All. for Hippocratic Med.*, 602 U.S. at 394. Further, Judicial Watch's diversion of resources did not interfere with its "core business activities," meaning *Havens* is inapposite. *Id.* at 395 (holding the associations' alleged injuries "have not imposed any similar impediment to the medical associations' advocacy business"). Therefore, Judicial Watch does not establish the injury in fact necessary to satisfy the standing inquiry. *See*

*Lujan*, 504 U.S. at 560 (to have standing "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical'" (citations omitted)).

IFA and Breakthrough Ideas allege more specific diversions of their respective resources; however, they also fail to establish that they suffered an injury in fact. Plaintiffs argue that *Lawson* supports their standing argument, but neither IFA nor Breakthrough Ideas have established concrete injuries akin to those the plaintiffs in *Lawson* suffered. In that case, the court found that the plaintiffs established standing when they alleged "concrete and specific adverse consequences" they would suffer as the result of a law that would automatically remove certain voters from registration rolls, such as needing to spend limited resources to adjust voter education curriculum to address the new law, assist voters who were erroneously removed from the rolls pursuant to it, and address any chaos the law would cause on election day. *Lawson*, 937 F.3d at 952.

IFA and Breakthrough Ideas here allege that the State Defendants' failure to comply with the NVRA has made their "ability to contact Illinois voters . . . more difficult because the voter rolls contain many outdated and ineligible registrations." Doc. 1 ¶¶ 94, 96. Unlike the plaintiffs in *Lawson*, however, IFA and Breakthrough Ideas do not allege that the State Defendants' actions have forced them to spend time and money to amend and adapt their public education or outreach. *See Lawson*, 937 F.3d at 951–52. Furthermore, IFA and Breakthrough Ideas also fail to satisfy the infringement on business standard as set out in *Havens* because their assertion that the Board's failure to comply with the NVRA makes it more difficult for them to contact Illinois voters falls short of showing that it "perceptibly impaired" their advocacy interests. *Havens*, 455 U.S. at 379. Rather, IFA and Breakthrough Ideas assert injuries that are more akin to "a setback

to the organization's abstract social interests," which the *Havens* Court found insufficient to establish the injury in fact necessary to obtain standing. *Id.* at 379 (explaining that the plaintiff had standing because their alleged injury was more than "simply a setback to the organization's abstract social interests"). Consequently, the organizational Plaintiffs also have not sufficiently alleged that they have standing to bring their Section 8(a)(4) claim, so the Court dismisses it without prejudice.

### B. Violation of Section 8(i) (Count II)

Section 8(i) requires states to "maintain for at least 2 years" and "make available for public inspection . . . all records concerning the implementation of programs and activities conducted" to comply with the NVRA. 52 U.S.C. § 20507(i). Plaintiffs allege that the State Defendants cannot satisfy their Section 8(i) obligations if they do not have access to local election authorities' list maintenance records. Therefore, Plaintiffs assert that the State Defendants' decision to refer Plaintiffs to local election authorities to obtain the information they requested pursuant to Section 8(i) amounted to a violation of the State Defendants' public disclosure obligations.

Defendants argue that Plaintiffs have not sufficiently alleged an injury in fact with respect to this claim. Defendants argue that an informational injury under Section 8(i) requires plaintiffs to identify downstream consequences that they incurred from the failure to receive the requested information. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) ("[P]laintiffs have identified no downstream consequences from failing to receive the required information." (quotations omitted)). Defendants claim that Plaintiffs here suffered no such harm because they did not deny Plaintiffs the requested information but instead informed them where they could obtain it. Additionally, the Intervenor Defendants argue that Judicial Watch's claimed

downstream consequences amount to nothing more than a generalized interest for information that is insufficient to establish standing. Plaintiffs rejoin that an informational injury does not require them to provide burdensome evidence and that they need only allege that they will suffer if the defendant denies them the required information. The Court addresses only whether Judicial Watch has standing to bring Count II as it was the sole Plaintiff that made the August 4, 2023, records request to the State Defendants and could therefore be the only Plaintiff that suffered an injury from the State Defendants' failure to provide access to the information.

Courts have recognized that "the NVRA provides a public right to information." *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 703 (E.D. Va. 2010). A state's failure to provide access to it can inflict on a plaintiff a sufficiently particularized injury in fact to confer standing. *See FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[T]his Court has previously held that a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." (citation omitted)). However, "[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III" standing. *TransUnion LLC*, 594 U.S. at 442 (quotations omitted) (citation omitted).

Although Defendants argue that *TransUnion* supports their claim that a mere denial of information does not satisfy the requirements for an informational injury, the holding there is distinguishable from this case because in *TransUnion* the plaintiffs did not allege that the defendant completely deprived them of information, but rather that "they received it *in the wrong format*." *Id.* at 441. The Court found that this purported injury did not confer standing because the plaintiffs failed to demonstrate how the incorrect format harmed them. *Id.* at 442. Importantly, *TransUnion* did not involve "denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information." *Id.* at 441 (holding

16

the plaintiffs did not bring an informational injury). Conversely, Judicial Watch asserts an informational injury based on the public disclosure requirements of Section 8(i) of the NVRA. Additionally, Judicial Watch alleges that the State Defendants' failure to provide the required information hampered its mission "to promote transparency, integrity, and accountability in government and fidelity to the rule of law." Doc. 1 ¶ 82. Therefore, Judicial Watch has sufficiently alleged an informational injury that caused it adverse effects, allowing it to proceed on its Section 8(i) claim. *Akins*, 524 U.S. at 21; 52 U.S.C. § 20507(i).

Finally, Defendants argue that Judicial Watch suffered no downstream consequences because the State Defendants did not deny them the requested information, but instead informed them where the information was available. The Intervenor Defendants also cite to *Public Interest Legal Foundation, Inc. v. Nago*, where a court found that plaintiffs lacked standing to bring a Section 8(i) claim because they had not requested the information from the counties themselves. No. 23 C 389, 2024 WL 3233994, at *5 (D. Haw. June 28, 2024). *Nago* presented a substantially identical issue, where voters requested Section 8(i) information from state officials, who in turn directed them to contact local officials to obtain the information. *Id.* at *1. But Plaintiffs argue that this holding is contrary to the text of Section 8(i), which requires states—not localities or counties—to provide the requested NVRA information. Further, Plaintiffs argue such a reading would make Section 8(i) record requests "prohibitively costly or even impossible to use." Doc. 61 at 14.

Respectfully, the Court disagrees with *Nago*. While *Nago* described the issue it faced as posing a standing question, the Court considers the question of whether the State Defendants' referral of Judicial Watch to county-level sources of data complies with Section 8(i) as an ultimate merits question. *See United States v. Funds in the Amount of $239,400*, 795 F.3d 639,

645 (7th Cir. 2015) ("They may or may not succeed on the merits, but that is a different matter

[than whether parties have standing]."); *Sierra Club v. U.S. E.P.A*, 774 F.3d 383, 389 (7th Cir.

2014) ("In reviewing the standing question, the court must be careful not to decide the questions

on the merits for or against the plaintiff, and must therefore assume that on the merits the

plaintiffs would be successful in their claims." (quoting *City of Waukesha v. EPA*, 320 F.3d 228,

235 (D.C. Cir. 2023))); *Project Vote*, 752 F. Supp. 2d at 704 (rejecting defendants' argument that

plaintiff did not have standing because plaintiff did not have a right to the information requested

because that argument "improperly conflates the threshold standing inquiry with the merits of the

plaintiff's claim" (citation omitted)).  Thus, as Judicial Watch sufficiently alleges an injury in

fact, given Defendants' lack of opposition to the remaining standing factors, the Court accepts as

true Judicial Watch's other allegations that the State Defendants' actions caused the harm and

that this Court may provide Judicial Watch with relief.  Therefore, the Court finds Plaintiffs have

standing to pursue its Section 8(i) claim.

## II.    Eleventh Amendment

The State Defendants next argue that the Board enjoys Eleventh Amendment immunity

from Plaintiffs' suit.  The Eleventh Amendment bars suits brought against a state in federal

court.  *Pennhurst State Sch. & Hosp. v. Holderman*, 465 U.S. 89, 98 (1984).  Sovereign

immunity does not apply where the state consents to suit or federal legislation abrogates the

immunity pursuant to a constitutional grant of authority.  *Tennessee v. Lane*, 541 U.S. 509, 517

(2004).  Although the Supreme Court has held that Congress cannot abrogate a state's immunity

pursuant to its Article I powers, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64 (1996), under

the plan of the Convention doctrine, Congress does not need to explicitly do so where a state

implicitly agreed to forfeit aspects of its sovereign immunity by joining together with its sister

states to create the federal government, *PennEast Pipeline Co. v. New Jersey*, 594 U.S. 483, 501

(2021) ("States can also be sued if they have consented to suit in the plan of the Convention.").

      Congress enacted the NVRA pursuant to its Elections Clause powers. *Lawson*, 937 F.3d

at 947 (noting that Congress enacted the NVRA "pursuant to the language in Article I, section 4,

clause 1, stating that 'Congress may at any time by Law make or alter such [state] Regulations,

except as to the Places of choosing Senators.'" (quoting U.S. Const. art. I, § 4, cl. 1)). Pursuant

to the plan of the Convention doctrine, the Supreme Court recognized that the Elections Clause

expressly divests the states of any original power over elections. *U.S. Term Limits, Inc. v.

Thornton*, 514 U.S. 779, 804–05 (1995) ("[T]he provisions governing elections reveal the

Framers' understanding that powers over the election of federal officers had to be delegated to,

rather than reserved by, the States[.]"); *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570

U.S. 1, 14–15 (2013) ("[T]he States' role in regulating congressional elections—while weighty

and worthy of respect—has always existed subject to the express qualification that it 'terminates

according to federal law.'" (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347

(2001))); *Harkless v. Brunner*, 545 F.3d 445, 454–55 (6th Cir. 2008) ("In ratifying Article I,

Section 4, the states . . . gave Congress plenary authority over federal elections . . . .").

Therefore, in the constitutional design, the states consented to be sued for claims related to the

time, place, and manner of federal elections. *See Garcia v. San Antonio Metro. Transit Auth.*,

469 U.S. 528, 549 (1985) (states retain sovereign immunity "only to the extent that the

Constitution has not divested them of their original powers and transferred those powers to the

Federal Government"); *ACORN v. Edgar*, 56 F.3d 791, 796 (7th Cir. 1995) ("[I]n this case

Illinois advances the related notion that to make a state administer federal elections fatally

compromises state sovereignty. That particular 'fatal compromise,' however, is built into the

Constitution, precisely in Article I section 4, the first sentence of which places the burden of administering federal elections on the states.").  Accordingly, litigation against states pursuant to the NVRA falls within the scope of suits to which the states consented as part of the constitutional design of the Elections Clause.  *See Thornton*, 514 U.S. at 804–05; *Lawson*, 937 F.3d at 947.  Thus, the Court finds that sovereign immunity does not protect the Board from Judicial Watch's Section 8(i) claim.  *See PennEast*, 594 U.S. at 502 (when consistent with the constitutional design, certain constitutional powers "fall[] comfortably within the class of suits to which States consented under the plan of the Convention.").

## III.    Sufficiency of the Allegations

Defendants also challenge the sufficiency of Plaintiffs' allegations regarding the State Defendants' alleged violation of Section 8(i) of the NVRA.  Section 8(i) requires states to "maintain for at least 2 years and . . . make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. § 20507.

The State Defendants again argue that they did not deny the Judicial Watch's request for records but rather informed Judicial Watch that it could access the requested information elsewhere.  Defendants contend that such a response satisfied the State Defendants' obligations under Section 8(i).  Plaintiffs counter that the NVRA requires Illinois, rather than the individual counties, to maintain and provide access to the information they requested through Section 8(i).  Additionally, Plaintiffs assert that the sheer number of Illinois counties—108—would make it impractical to utilize Section 8(i) of the NVRA if the law required them to send record requests to each individual county.

20

As the Court noted above, whether the Board's referral of Judicial Watch to Illinois' county elections offices to obtain voter registration records satisfies Section 8(i) is ultimately a merits question. The parties' dispute centers around whether the phrase, "Each State shall maintain . . . and shall make available for public inspection," 52 U.S.C. § 20507(i)(1), means (in Plaintiffs' view) that the Board must itself provide access to NVRA records or simply that (under Defendants' interpretation) the Board must only direct an inquiring party like Judicial Watch to where it may obtain such access. Ordinarily, the Court could resolve this issue at the motion to dismiss stage, particularly because there does not appear to be any need for additional discovery to develop the factual record. However, the parties' briefing on this important question boils down to a handful of conclusory paragraphs that do not grapple with the text of the NVRA or other court decisions interpreting this language, *see* Doc. 41-1 at 28 ("But as previously discussed, Plaintiffs were not denied access to this information. Rather, the Board simply informed Plaintiffs that the requested information is maintained with the local election authorities pursuant to 26 Ill. Adm. Code § 216.40(f) and directed Plaintiff to request this information from the local election authorities."), Doc. 57-1 at 18 ("As State Defendants have explained, Plaintiffs were not denied access to information; the Board informed Plaintiffs that the requested information is maintained with the local election authorities."), or that ignore the question entirely, *see* Doc. 49 at 30 (As stated *supra* . . . whether this 'access' [that the Board provided] comports with Section 8(i) is a merits question which should not be decided on this motion."). As such, the Court does not find it appropriate to decide this important question without further briefing, particularly given the Court's failure to find binding caselaw that clearly compels one reading or the other, and so will allow the claim to proceed at this time.

21

Accordingly, the Court denies Defendants' motions to dismiss Judicial Watch's Section 8(i) claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motions to dismiss [41, 57]. The Court dismisses the Section 8(a)(4) claim (Count I) without prejudice for lack of standing as to all Plaintiffs. The Court dismisses the Section 8(i) claim (Count II) without prejudice for lack of standing with respect to IFA and Breakthrough Ideas. The Court finds that Judicial Watch has standing to bring and states a claim for relief regarding its Section 8(i) claim. Plaintiffs may file an amended complaint repleading their Section 8(a)(4) claim by November 29, 2024, if they are able to do so.

Dated: October 28, 2024

_____
SARA L. ELLIS
United States District Judge