## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JUDICIAL WATCH, INC.;<br>ILLINOIS FAMILY ACTION;<br>BREAKTHROUGH IDEAS; and<br>HANNAH SHIPMAN,<br><br>     Plaintiffs,<br><br>     v.<br><br>THE ILLINOIS STATE BOARD OF<br>ELECTIONS; and<br>BERNADETTE MATTHEWS, in her official<br>capacity as the Executive Director of the<br>Illinois State Board of Elections,<br><br>     Defendants. | Civil Action No. 1:24-cv-01867<br><br>Judge Sara L. Ellis |

### STATEMENT OF INTEREST OF THE UNITED STATES

When Illinois voters cast their ballots, they should be confident that their vote is given its due weight, undiluted by ineligible voters. This confidence is the bedrock of participatory democracy. Section 8(a)(4) of the National Voter Registration Act requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters . . . ." 52 U.S.C. § 20507(a)(4).

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States[.]" This case presents important questions regarding enforcement of the National Voter Registration Act, 52 U.S.C. §§ 20501-11 ("NVRA"). Congress has vested the Attorney General with authority to enforce the NVRA on behalf of the United States. *See* 52 U.S.C. § 20510(a). Accordingly, the United States has a substantial interest in ensuring

proper interpretation of the NVRA. The United States submits this Statement of Interest for the limited purpose of addressing the requirements under the NVRA for states to conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters, and to maintain and make available for public inspection certain records concerning the implementation of NVRA-related programs and activities. *Id.* § 20507(a)(4); (i). The United States takes no position on any other issue before this Court.

## I.    Procedural Background

On March 5, 2024, Plaintiffs Judicial Watch, Inc.; Illinois Family Action; Breakthrough Ideas; and Carol J. Davis (collectively, "Plaintiffs") filed a Complaint against the Illinois Board of Elections and Bernadette Matthews in her capacity as the Board's Director (together, "Defendants"). ECF No. 1. The Complaint alleged Defendants failed to conduct a general program that "makes a reasonable effort to cancel the registrations of Illinois voters who have become ineligible by reason of a change of residence" as required under Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4), and to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," as required under Section 8(i). *Id.* at 20507(i).

On November 29, 2024, Plaintiffs filed a First Amended Complaint ("FAC"), ECF No. 70, which is the subject of the instant Motion to Dismiss (the "Motion"), ECF No. 80. The FAC alleges the same claims under Sections 8(a)(4) and 8(i) of the NVRA as the original Complaint, with some additional and revised factual allegations.

As relevant here, the FAC alleges that, according to 2023 Election Administration and Voting Survey ("EAVS") data, eleven counties in Illinois removed zero registrants pursuant to Section 8(d)(1)(B), and twelve other counties removed fifteen or fewer registrants from November

2

2020 to November 2022. *See* FAC ¶¶ 28-29. It further alleges that: (1) thirty-four jurisdictions failed to report any data regarding Section 8(d)(1)(B) removals, (2) twenty-nine counties failed to report any data regarding the number of confirmation notices sent from November 2020 to November 2022, and (3) twenty-two jurisdictions did not report any data regarding the number of inactive registrations on their rolls from November 2020 to November 2022. *See id.* ¶¶ 38, 43, 46.

The FAC also alleges that on August 4, 2023, Plaintiff Judicial Watch wrote a letter to Defendant Matthews asking "whether the data concerning low removals in 23 counties was accurate, and, if it was not accurate, to supply correct data." *Id.* ¶ 52. It asked her to "supply the missing county or city-level data about Section 8(d)(1)(B) removals, Confirmation Notices, and inactive registrations." *Id*. According to the FAC, on September 1, 2023, Defendants responded that the State Board "does not have access to local election authorities' list maintenance records" and that "[a]ny request for more information regarding specific jurisdictions' list maintenance activities and/or EAVS survey statistics should be made [] directly to the local election authority." *Id.* ¶ 56. Defendants also stated that "local election authorities, not [the state board of elections], maintain lists of all voters to whom a forwardable confirmation of address notice has been sent." *Id.* ¶ 57.

On January 17, 2025, Defendants filed the instant Motion. ECF No. 80. On April 11, 2025, Plaintiffs filed a Response to Defendants' Motion to Dismiss. ECF No. 90. On May 16, 2025, Defendants filed a Reply. ECF No. 102. A hearing on the Motion is scheduled for July 15, 2025.

## II.    Statutory Requirements of the National Voter Registration Act

Section 8 of the NVRA establishes requirements in covered states for the administration of voter registration for elections for federal office. 52 U.S.C. § 20507.

3

General requirements are discussed in Section 8(a). As relevant to the instant matter, Section 8(a)(4) requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the death of the registrant or a change in the residence of the registrant, in accordance with subsections (b), (c), and (d)[.]" *Id*. § 20507(a)(4)(A)-(B).

Sections 8(b) and 8(c) set forth obligations for confirming voter registration and establishing voter removal programs. As part of a state's "program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office[,]" state voter list maintenance programs must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. § 1973[*et seq.*])." 52 U.S.C. § 20507(b)(1); *see also* S. Rep. No. 103-6 at 31 (Feb. 25, 1993) ("The term 'uniform' is intended to mean that any purge program or activity must be applied to an entire jurisdiction."); H.R. Rep. No. 103-9 at 15 (Feb. 2, 1993) (same).

Section 8(d) establishes specific requirements for the removal of names from voting rolls. Section 8(d)(1) of the NVRA provides that a state "shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence" unless one of two circumstances has occurred. 52 U.S.C. § 20507(d)(1). The first is when "the registrant confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered." *Id.* § 20507(d)(1)(A). The second is when the registrant "has failed to respond to a notice described in [Section 8(d)(2)] and has not voted or appeared to vote . . . in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice." 52 U.S.C. § 20507(d)(1)(B). Section 8(d)(2) sets forth specific

4

requirements for the aforementioned notice ("Confirmation Notice") to be sent to registrants, and Section 8(d)(3) provides that a "voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with [Section 8(d)]." *Id.* § 20507(d)(2)-(3).

Section 8(i) discusses obligations related to public disclosure of voter registration activities. Subject to delineated exceptions not relevant here, Section 8(i)(1) of the NVRA specifically provides that "[e]ach *State* shall *maintain* for at least 2 years and shall *make available* for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ." *Id.* § 20507(i)(1) (emphasis added). Section 8(i)(2) further specifies that such records shall include "lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent," as well as "information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made." *Id.* § 20507(i)(2).

Finally, Section 10, which is relevant to the implementation of Section 8, requires each state to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities" under the NVRA. *Id.* § 20509.

## III. Argument

### a. A state is responsible for conducting a general program under Section 8(a)(4)'s "reasonable efforts" requirement.

The NVRA "speaks in terms of the responsibilities of 'each state.'" *Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014) (citing Sections 4(a) and 7(a)(1) of NVRA [52 U.S.C. §§ 20503(a), 20506(a)(1)]). This word choice "reflects a policy choice that responsibility should be centralized rather than fragmented." *Id.*; *cf. Husted v. A. Philip Randolph Inst.,* 584 U.S. 756, 761 (2018) (noting that, as an intervention to the prior practice of "le[aving] it up to the States to maintain

accurate lists of those eligible to vote in federal elections," the NVRA "erect[s] a complex superstructure of federal regulation atop state voter-registration systems" with the two objectives of "increasing voter registration and removing ineligible persons from the States' voter registration rolls.").

The state cannot offload its obligations under the NVRA to local jurisdictions. By its plain terms, the NVRA identifies one entity—the state—to carry out the administration of voter registration for federal elections. *See* 52 U.S.C. §§ 20507, 20509. Moreover, the statutory scheme of the NVRA makes clear that state responsibilities are meant to remain at the state, and not local, level. *cf. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme[.]"). The NVRA "centralizes responsibility in the state and in the chief elections officer, who is the state's stand-in." *Scott*, 771 F.3d at 839 (holding that "coordination" of state responsibilities under Section 10 of the NVRA, 52 U.S.C. § 20509, includes state enforcement power against state and local entities).

Courts have found the NVRA sections that use the same "Each State shall . . ." formulation set forth statutory obligations that the state may not delegate to a local entity, even if counties or local officials are involved in carrying out tasks for which states are ultimately responsible. Indeed, in *United States v. Missouri*, the Eighth Circuit considered the same Section 8(a)(4) provision at issue here, and held that "[u]nder the NVRA's plain language, Missouri may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility if such a program is not reasonably conducted." 535 F.3d 844, 849-50 (8th Cir. 2008).

The Sixth Circuit in *Harkless v. Brunner* described the language of the NVRA even more broadly, and reasoned that "the *entire Act*, including other subsections, speaks in terms of state

responsibilities; what is noticeably missing is any mention of county, municipal, or other local authorities." *Harkless*, 545 F.3d 445, 452-53 (6th Cir. 2008) (emphasis added). Accordingly, it held that each state must designate voter registration agencies and ensure they complete the required tasks pursuant to Section 7 of the NVRA, 52 U.S.C. § 20506, and that in that case, Ohio's chief election official, the secretary of state, was responsible for implementation and enforcement of the NVRA requirements.

The state's list maintenance duties are an essential part of the NVRA. Over the course of the statutory history that led to the NVRA, the list maintenance requirements evolved from requiring states to simply "establish a uniform and nondiscriminatory program to assure that official voter registration lists are accurate and current" to requiring that states "conduct a general program that makes a reasonable effort to remove ineligible voters[.]" *Compare* National Voter Registration Act of 1989, H.R. 2190, 101st Cong. § 106 (1989) *with* National Voter Registration Act of 1993, H.R. 2, 103rd Cong. § 8 (1993). The evolution of this NVRA language shows Congress's deliberate choice—from the more passive verb "establish" in an earlier proposal to "conduct" in the enacted version—that states have active engagement in the effort to remove the names of ineligible voters. *See cf. Arizona v. United States*, 567 U.S. 387, 405 (2012) (stating that changed language in a statute's drafting history "reflects a considered judgment" by Congress, which informed the Court's interpretation of the statute). Together, the statutory language and history make clear that the duty to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" under the NVRA includes an obligation to take affirmative steps to effectuate the list maintenance requirements. To that end, the list maintenance program also should be effective to achieve the goals set out by Congress. *See* S. Rep. 103-6 at 18 (Feb. 25, 1993) ("The maintenance of accurate and up-to-date voter registration lists is the hallmark of

a national system seeking to prevent voter fraud."); H.R. Rep. No. 103-9 at 35-36 (Feb. 2, 1993) ("Inaccurate registration lists are the bane of every election official, can lead to fraud[,] and are extremely costly to the states, political parties, candidates and others who depend on them for effective voter contact").

The Courts' analysis in *Missouri* reinforces this point. In *United States v. Missouri*, the Eighth Circuit considered what specific actions states must take to "conduct a general program" under the NVRA and whether and how provisions "envision delegation[.]" *Missouri*, 535 F.3d at 849-51. For example, the court looked at the requirement on states to "ensure" that the agency through which a voter registers is not made public. *See* 52 U.S.C. § 20507(a)(6). It stated that "if Missouri delegated this responsibility, it could not avoid liability for any failure to maintain such nondisclosure," because it is the state's responsibility to 'ensure' that the identity remains undisclosed. *Missouri*, 535 F.3d at 849. The Eighth Circuit contrasted the term 'ensure' with the term 'require,' which it stated is an obligation a state might fulfill by "do[ing] little more than pass a mandatory law." *Id*. It explained that a term that "encompass[es] the concept of providing leadership" is terminology that "clearly envisions" active oversight. *Id*. at 850.[1]

The "reasonable effort" requirement is an active, non-delegable responsibility of the state. As a result, a state's actual actions or lack thereof can indicate that a state is not "conduct[ing] a general program that makes a reasonable effort to remove the names of ineligible voters" under

---

[1] The Sixth Circuit in *Harkless* also rejected the view that the responsibility of the state secretary of state ended once the state designated local offices as voter registration agencies under Section 7. *Id.* Otherwise, "if every state passed legislation delegating NVRA responsibilities to local authorities, the fifty states would be completely insulated from any enforcement burdens, even if NVRA violations occurred throughout the state." *Id.* (footnote omitted); *see also United States. v. New York*, 255 F. Supp. 2d 73, 79 (E.D.N.Y. 2003) (stating that as to NVRA Section 7 provisions, "[i]t would be plainly unreasonable to permit a mandatorily designated State agency to shed its NVRA responsibilities because it has chosen to delegate the rendering of its services to local municipal agencies").

the NVRA. 52 U.S.C. § 20507(a)(4). Indeed, there must be evidence that the state actually "conduct[s]" the required "general program." *Id.*; *see also e.g.*, *Bellitto v. Snipes*, 935 F.3d 1192, 1205-07 (11th Cir. 2019) (considering whether jurisdiction's actual practices regarding removals for deaths amounted to reasonable effort to remove ineligible voters).

The State of Illinois argues that its use of the "safe harbor" provision guarantees it has made a reasonable effort to remove the names of ineligible voters. ECF 80-1 at 22. Not necessarily. In order to comply with the NVRA and take advantage of the safe-harbor provision, a state "must not only identify potentially ineligible registrants using the NCOA database and mailing procedures, but must also actually remove those ineligible registrants from the rolls." *Bellitto*, 935 F.3d at 1204. Inaction after localities report few to no registrant removals may indicate that the state is not effectively engaging in its duty to conduct a program that makes reasonable ineligible voter removal efforts.

The Eighth Circuit in *Missouri* explained how inaction by local election agencies may lead to an NVRA violation. After determining that "[u]nder the NVRA's plain language, Missouri may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility if such a program is not reasonably conducted," the Eighth Circuit found that lack of compliance with the NVRA by local election agencies was "relevant to determining whether or not Missouri is reasonably 'conduct[ing] a general program[.]'" *Id.* at 850-51. The court went on to discuss possible remedies in these circumstances:

> For instance, if the district court determines a lack of [local election agency, or "LEA"] compliance renders Missouri's efforts to conduct a general program unreasonable, it could order Missouri either to (1) develop different or improved methods for *encouraging* LEA compliance, or (2) assume direct responsibility for some or all of the activities needed to remove ineligible voters from the voter rolls (*i.e.*, cease delegating NVRA responsibilities to the non-complying LEAs).

9

*Missouri*, 535 F.3d at 851; *see also Harkless*, 545 F.3d at 453; *Scott*, 771 F. 3d at 839. Ultimately, the Eighth Circuit ordered the district court to "consider any lack of LEA compliance and determine whether any such noncompliance renders Missouri's effort to 'conduct a general program' unreasonable in removing the names of ineligible voters." *Missouri,* 535 F.3d at 851. Thus, under *United States v. Missouri*, a failure of a state to ensure local jurisdictions are complying with NVRA requirements could render a state's efforts to conduct a general registration program unreasonable.

There is inherent sense in this reasoning. If a significant percentage of jurisdictions within a state do not report data regarding the number of removals under NVRA, the state's ability to conduct a general program is significantly limited. Most obviously, the state could not be certain that there were any Confirmation Notices sent or any registrants removed after the Confirmation Notice, as required by Section 8 of the NVRA. Likewise, if jurisdictions do not share underlying list maintenance data with the state, it would be unable to provide the totality of relevant information to those who request information under Section 8(i) of the NVRA.

The nonreporting of data by localities in the instant case also distinguishes this matter from cases in which states were found to have satisfied the reasonable effort requirement.[2] In *PILF v. Benson,* the Sixth Circuit held that the NVRA does not impose a "quantifiable" target for removals

---

[2] As the factual record has yet to be developed, the United States takes no position as to whether Defendants' efforts meet Illinois' responsibilities under the NVRA. *See Jud. Watch, Inc. v. Griswold*, 554 F. Supp. 3d 1091, 1107–08 (D. Colo. 2021) (stating that it would be improper to make a determination on the reasonableness of Colorado's figures prior to the development of the record). The United States further notes that the undeveloped factual record is in itself a reason to deny the Motion, where the Defendants make arguments attempting to explain the data, the absence of data, or how the state's efforts are nonetheless reasonable. *See Bellitto v. Snipes,* 221 F. Supp. 3d 1354, 1366 (S.D. Fla. 2016) (rejecting the Defendant's 12(b)(6) argument that it is in full compliance with [the NVRA's voter list maintenance requirement], because it is "a fact-based argument more properly addressed at a later stage of the proceedings").

under its list maintenance obligations and that the "record demonstrate[d] that deceased voters are removed from Michigan's voter rolls on a regular and ongoing basis." *Pub. Int. Legal Found. v. Benson,* 136 F.4th 613, 625–27 (6th Cir. 2025). That holding is distinguishable from the case at bar, where the FAC alleges that whole swaths of Illinois jurisdictions simply reported *no* data for the EAVS Report. The standard that the Court adopted in *PILF v. Benson* was that a state "must establish a program that makes a rational and sensible attempt to remove dead registrants." *PILF,* 136 F.4th at 625. The FAC alleges thirty-four jurisdictions failed to report any data regarding Section 8(d)(1)(B) removals, twenty-nine counties failed to report any data regarding the number of confirmation notices sent from November 2020 to November 2022, and twenty-two jurisdictions did not report any data regarding the number of inactive registrations on their rolls from November 2020 to November 2022. These allegations, taken as true for purposes of a motion to dismiss, suggest that the state has entirely failed to act with respect to certain jurisdictions. A failure to act entirely is neither rational nor sensible, rather it suggests Illinois may be abdicating its statutory obligation to conduct a general program that makes a reasonable effort to remove the names of ineligible voters. A rational and sensible program is a program that is effective in achieving its purpose.

   b.  <u>A state's requirement to maintain and make available records under 8(i) is also non-delegable</u>.

The state is also responsible for the public disclosure requirements under Section 8(i). *See* 52 U.S.C. § 20507(i). Under Section 8(i), the state must perform two actions. It must: (1) "maintain" for at least two years records related to programs and activities that the state has conducted to ensure the accuracy of eligible voter lists, and (2) "make available" those records to the public. *Id.* § 20507(i)(1).

11

As with other sections of the NVRA and Section 8 subsections, Section 8(i) articulates the obligations of each state, and not each state's political subdivisions. *See* 52 U.S.C. § 20507(i)(1) ("Each State shall maintain for at least 2 years and shall make available for public inspection" certain records concerning the implementation of programs conducted to ensure the accuracy and currency of official lists of eligible voters); *see also id.* § 20507(a)(4) ("In the administration of voter registration for elections for Federal office, each State shall . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by reason of the death or a change in residence of the registrant); *id.* §§ 20506(a)(1) ("Each State shall designate agencies for the registration of voters in elections for Federal office."); *id.* at § 20506(a)(2) (specifying the offices in the state that "[e]ach State shall designate as voter registration agencies").

The state's obligations under Section 8(i) are to "maintain" and "make available" for public disclosure records related to voter list maintenance programs and activities. The reasoning in *Missouri* is again instructive. Like "conduct," the terms "maintain" and "make available" are "active verb[s.]" *See Missouri*, 535 F.3d at 850 (analyzing the term "conduct" in Section 8(a)(4) of NVRA); *see also* Oxford English Dictionary (defining "maintain" to include "[t]o keep up, preserve, cause to continue in being (a state of things, a condition, an activity, etc.); . . . to guard from loss or deterioration"), Merriam-Webster Dictionary (defining "maintain" to include to "preserve from failure or decline"). As explained by the Eighth Circuit in *Missouri*, a verb that indicates active engagement, oversight, or leadership will create a non-delegable obligation. *See Missouri*, 535 F.3d at 850.

Section 10's requirement for each state to designate a chief election official responsible for coordination of state responsibilities under the NVRA reinforces the specific obligations that NVRA provisions, including Section 8(i), place on each state. 52 U.S.C. § 20509; s*ee Harkless*,

12

545 F.3d at 452. States cannot insulate themselves from those responsibilities by delegating them to counties or local authorities, even if subdivisions of the state have some role in carrying out tasks in furtherance of NVRA responsibilities. *See Missouri*, 535 F.3d at 850-51; *Harkless*, 545 F.3d at 452. The NVRA provision requiring notice by an aggrieved person to the chief election official of the state of a violation to provide the opportunity to remedy the issue would be rendered futile if a state could delegate its Section 8(i) responsibilities. *See Harkless*, 545 F.3d at 452-53; 52 U.S.C. § 20510(b). Where Section 8 contemplates a specific involvement of political subdivisions or local officials, it does so explicitly. *See, e.g.* 52 U.S.C. § 20507(g)(5) (requiring the "chief State election official" to notify "the voter registration officials of the local jurisdiction in which an offender resides" of information received about a felony conviction in a federal court from a United States attorney).

Thus, like other provisions of Section 8 of the NVRA, the state cannot delegate its responsibilities under Section 8(i) to local subdivisions. Where—as here—it is alleged that a significant amount of the state has not reported the required data under the NVRA, it impairs states' ability to provide, and individuals' ability to examine, the records required under Section 8(i). These allegations, if proven, may show a violation of Section 8(i) of the NVRA.

## IV.    Conclusion

The United States respectfully requests this Court's consideration of this Statement of Interest and welcomes the opportunity to provide further assistance at the Court's request.

Date: July 8, 2025

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division


s/ Timothy F. Mellett
MAUREEN RIORDAN
Acting Chief, Voting Section
TIMOTHY F. MELLETT
CALLIE BRUZZONE
MARY ROSENBERG
Trial Attorneys, Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20002
Telephone: 202-307-2767
Timothy.F.Mellett@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 8, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.


<u>s/ Timothy F. Mellett</u>
Timothy F. Mellett